**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Daniel Wayne Cook,                    )    No. CV 10-2454-PHX-RCB
                                      )
           Plaintiff,                 )    **ORDER**
                                      )
vs.                                   )
                                      )
                                      )
Janice K. Brewer, et al.,             )
                                      )
           Defendants.                )
                                      )
_____)

        Plaintiff Daniel Wayne Cook, an Arizona prisoner under sentence of death, filed this civil rights action against Janice Brewer, Governor of Arizona; Charles Ryan, Director of the Arizona Department of Corrections (ADC); Ernest Trujillo, Warden of ADC's Eyman facility; Carson McWilliams, Warden of ADC's Florence facility; and Does 1-50. Defendants moved to dismiss, and Plaintiff filed an opposition.   (Docs. 15, 16.) Subsequently Eric John King, another Arizona prisoner under sentence of death, moved to intervene.  (Doc. 17.)  As set forth in this order, the Court grants Defendants' motion to dismiss and denies King's motion to intervene.

**I.      Background**

        In 1988, Plaintiff was convicted and sentenced to death on two counts of first-degree murder in the brutal deaths of two acquaintances.  The facts surrounding the crimes are set

forth in the Arizona Supreme Court's decision affirming the convictions and sentences on appeal. *See State v. Cook*, 170 Ariz. 40, 45-46, 821 P.2d 731, 736-37 (1991). Subsequent petitions for state post-conviction and federal habeas relief were denied.

Because Plaintiff committed his crimes before November 23, 1992, he has the choice to be executed by either lethal injection or lethal gas. *See* Ariz. Rev. Stat. § 13-757(B). If he does not choose a method of execution, ADC must use lethal injection to execute him. *Id.* Similar to other states, Arizona's protocol for execution by lethal injection requires sequential administration of sodium thiopental, pancuronium bromide, and potassium chloride. "It is uncontested that, failing a proper dose of sodium thiopental that would render [a] prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride." *Baze v. Rees*, 553 U.S. 35, 53 (2008).

On September 24, 2010, the State of Arizona filed in the Arizona Supreme Court a motion for a warrant of execution for Plaintiff. The motion remains pending, and an execution date has not been set.[1] On November 10, 2010, Plaintiff filed the instant § 1983 complaint.

In Claim One, Plaintiff alleges that the State intends to execute him using non-FDA approved sodium thiopental manufactured in a foreign country, which creates a substantial and unnecessary risk of serious harm in violation of his rights under the Eighth Amendment. In Claim Two, Plaintiff alleges that the State's failure to provide him with notice regarding its acquisition of sodium thiopental violates his right to due process under the Fourteenth Amendment. In Claim Three, Plaintiff alleges that the administration of non-FDA approved sodium thiopental by a medical doctor or other trained medical professional demonstrates

---

[1]    The Arizona Supreme Court considered and continued the motion on November 30, 2010, and again on January 4, 2011, when it directed the parties to provide additional information. It is this Court's understanding that the motion is next slated to be considered on February 8, 2011.

deliberate indifference to his right to be free from cruel and unusual punishment under the Eighth Amendment.

The Court directed Defendants to answer the Complaint.  (Doc. 7.)  Defendants moved to dismiss on the ground that Plaintiff failed to state a claim because (1) he has not shown that administration of a foreign-manufactured drug in the lethal injection procedure gives rise to a substantial risk of harm as necessary to establish an Eighth Amendment violation; (2) he cannot establish a due process right to information concerning the drugs to be used in his execution; and (3) he has not shown that Defendants acted with deliberate indifference.  (Doc. 15.)

## II.    Federal Rule of Civil Procedure 12(b)(6)

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice.  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  In other words, while Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.*  Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

699 (9th Cir. 1990).  "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Nor must the court accept unreasonable inferences or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## III.   Motion to Dismiss

### A.   Claim One – Substantial Risk of Serious Harm

#### 1.   Parties' Contentions

Plaintiff alleges that the United States is experiencing a nationwide shortage of sodium thiopental because the only FDA-approved manufacturer, Hospira, Inc., has temporarily stopped manufacturing the drug.  As a result, according to Plaintiff, ADC used non-FDA approved sodium thiopental acquired from Great Britain to execute Arizona inmate Jeffrey Landrigan on October 26, 2010.  Plaintiff alleges that drugs from foreign countries "do not have the same assurance of safety as drugs actually regulated by the FDA" and that there is a significant risk a drug from a non-FDA approved foreign manufacturer could be contaminated or compromised.  (Doc. 1 at 7 (citing *In re Canadian Import Antitrust Litigation*, 470 F.3d 785, 789 (8th Cir. 2006).)  He further alleges that ADC likely obtained the sodium thiopental it intends to use in his execution in violation of federal law and that there is a substantial risk "the drug itself could cause pain and suffering to Plaintiff if it is contaminated, compromised, or substandard." (*Id.* at 8.)  Finally, Plaintiff alleges that there is a substantial risk he will experience excruciating pain from administration of the second and third drugs if the State is permitted to proceed in carrying out his sentence using non-FDA approved sodium thiopental.  (*Id.*)

In their motion to dismiss, Defendants acknowledge that the sodium thiopental to be used in Plaintiff's execution was obtained from England.  (Doc. 15 at 4.)  Documents provided to the Arizona Supreme Court, including forms from the Department of Homeland Security and the FDA apparently authorizing importation of the drug, indicate that ADC

1   obtained sodium thiopental from Dream Pharma Ltd. in London, England, on September 29,

2   2010. *State's Response to Supplemental Memoranda on Motion for Issuance of a Warrant*

3   *of Execution*, at Exs. B-D, *State v. Cook*, No. CR-88-0301-AP (Ariz. Dec. 28, 2010).

4   Defendants argue for summary dismissal of Claim One on the grounds that Plaintiff's

5   assertion of a substantial and unnecessary risk of harm from execution using a non-FDA

6   approved drug is speculative and insufficient to state an Eighth Amendment claim.

7                    **2.     Analysis**

8           The Eighth Amendment "prohibits punishments that involve the unnecessary and

9   wanton inflictions of pain, or that are inconsistent with evolving standards of decency that

10  mark the progress of a maturing society." *Cooper v. Rimmer*, 379 F.3d 1029, 1032 (9th Cir.

11  2004).   That prohibition necessarily applies to the punishment of death, precluding

12  executions that "involve torture or a lingering death, or do not accord with the dignity of

13  man." *Beardslee v. Woodford*, 395 F.3d 1064, 1070 (9th Cir. 2005).  A violation of the

14  Eighth Amendment can be established by demonstrating there is a risk of harm that is "*sure*

15  *or very likely* to cause serious illness and needless suffering." *Brewer v. Landrigan*, 131 S.

16  Ct. 445, 445 (2010) (quoting *Baze*, 553 U.S. at 50, and *Helling v. McKinney*, 509 U.S. 25,

17  33 (1993)).  In other words, there must be a "substantial risk of serious harm." *Farmer v.*

18  *Brennan*, 511 U.S. 825, 842 (1994).

19          In support of his claim of substantial risk of serious harm from use of non-FDA

20  approved sodium thiopental, Plaintiff alleges the following:

21          (1)     That drugs from foreign countries lack the same assurance of safety as
            drugs regulated by the FDA and thus may be different from FDA-approved
22          drugs with respect to formulation, potency, quality, and labeling;

23          (2)     That FDA approval ensures a product is free of potentially harmful
            contaminants and that the label accurately reflects the concentration of the
24          drug;

25          (3)     That there is a significant risk a drug from a non-FDA approved foreign
            manufacturer was not produced in an environment requiring the drug to be
26          effective; and

27

    (4)    That there is a significant risk a non-FDA approved drug could be contaminated or compromised.

In *Iqbal*, the Supreme Court reiterated that legal conclusions unsupported by well-plead factual allegations are not entitled to the assumption of truth. 129 S. Ct. at 1950. Here, Plaintiff speculates that drugs obtained from a non-FDA approved manufacturer *may* be contaminated or compromised because such drugs lack the same "assurance of safety" as those regulated by the FDA. However, alleging that a drug lacks an assurance of safety is not the same as alleging that the drug itself is unsafe. Plaintiff alleges no facts to suggest that drugs made in foreign countries by non-FDA approved manufacturers are unsafe for their intended use. *See Landrigan*, 131 S. Ct. at 445 (observing that the plaintiff had proffered no evidence to suggest that sodium thiopental obtained from a foreign source is unsafe); *see also Landrigan v. Brewer*, 625 F.3d 1132, 1143 (9th Cir. 2010) (Kozinski, C.J., dissenting from the denial of rehearing en banc) (finding no basis to distinguish between a drug manufactured domestically by an FDA-approved company and the same drug made by a manufacturer located in a foreign country). Rather, he asserts only in a conclusory fashion that there is a "significant risk" such drugs were not produced in an environment requiring them to be effective. This is insufficient to "unlock the doors of discovery." *Iqbal*, 129 S. Ct. at 1950. Plaintiff also acknowledges that Arizona inmate Jeffrey Landrigan was executed using non-FDA approved sodium thiopental but has not alleged that Landrigan suffered any unnecessary pain or that the drug did not work as intended.

Plaintiff has failed to sufficiently plead a claim that use of foreign-obtained sodium thiopental is "*sure or very likely* to cause needless suffering." *Baze*, 553 U.S. at 50. Rather, his claim is based solely on speculation and the possibility that the sodium thiopental ADC obtained from England was exposed to toxins or otherwise compromised during manufacturing. A speculative claim of potential harm is insufficient to state an Eighth Amendment violation. *See Landrigan v. Brewer*, 625 F.3d at 1144 (Kozinski, C.J., dissenting from the denial of rehearing en banc) ("Landrigan's sheer speculation that he

might suffer from a contaminated or unapproved dose of sodium thiopental obtained from outside the United States comes nowhere near meeting his burden" of establishing a risk that is sure or very likely to cause needless suffering).  As explained by the Court of Appeals for the Sixth Circuit:

> Permitting constitutional challenges to lethal injection protocols based on speculative injuries and the possibility of negligent administration is not only unsupported by Supreme Court precedent but is also beyond the scope of our judicial authority.  While the Eighth Amendment does provide a necessary and not insubstantial check on states' authority to devise execution protocols, its purpose is not to substitute the court's judgment of best practices for each detailed step in the procedure for that of corrections officials.

*Cooey v. Strickland*, 589 F.3d 210, 225 (6th Cir. 2009) (internal citations omitted).

Moreover, Plaintiff's allegation of potential harm from use of non-FDA approved sodium thiopental is diminished by Arizona's protocol, which has significant safeguards in place to ensure that a prisoner is fully anesthetized prior to administration of pancuronium bromide and potassium chloride.  In *Dickens v. Brewer*, a § 1983 action brought by seven Arizona death row prisoners challenging Arizona's lethal injection protocol, the District Judge observed that although electronic monitors may be used to measure brain activity, physical examination such as stroking a patient's eyelashes to look for reflex and monitoring his breathing pattern is as good or better for assessing the depth of anesthesia.  *Dickens v. Brewer*, No. CV-07-1770-PHX-NVW, 2009 WL 1904294, at *12 (D. Ariz. Jul. 1, 2009) (unpublished order).  To this end, the Arizona protocol:

> requires that a microphone "be affixed to the inmate's shirt to enable the Medical Team and Special Operations Team Leader to verbally communicate directly with the inmate and hear any utterances or noises made by the inmate throughout the procedure."  It requires that the inmate "be positioned to enable the Medical Team and Special Operations Team Leader to directly observe the inmate and to monitor the inmate's face with the aid of a high resolution color NTSC CCD camera with 10x Optical zoom lens with pan tilt capability and a 19-inch resolution color monitor."  It requires the Medical Team to "continually monitor the inmate's level of consciousness and electrocardiograph readings, maintaining constant observation of the inmate utilizing direct observation, audio equipment, camera and monitor as well as any other medically approved method(s) deemed necessary by the Medical Team."  It requires the warden to "physically remain in the room with the inmate throughout the administration of the chemicals in a position sufficient to clearly observe the inmate and the primary and backup IV sites for any

potential problems." Further, after administration of the sodium thiopental and heparin/saline flush, the Medical Team must "confirm the inmate is unconscious by sight and sound, utilizing the audio equipment, camera and monitor," and a Medical Team member must "enter into the room where the inmate is located to physically confirm the inmate is unconscious, and that the catheter and lines are affixed and functioning properly, using methods deemed medically necessary." Although the Arizona Protocol does not define "methods deemed medically necessary," it is likely that Medical Team members, who must be medically trained, would be able to assess consciousness by telling the patient to respond and, upon receiving no response, be able to look for a simple reflex response to a tactile stimulus.

*Id.* at *21. If it appears that a prisoner is not fully anesthetized, the protocol prohibits the administration of any further drugs. Under Arizona's protocol, there is very little risk that Plaintiff would suffer unnecessary pain in the event sodium thiopental acquired from a non-FDA approved source failed to effectively anesthetize him.

### B.    Claim Two – Right to Due Process

#### 1.    Parties' Contentions

Plaintiff alleges that Defendants have violated his right to due process by failing to provide him with information regarding ADC's acquisition of sodium thiopental, which he asserts demonstrates "a lack of transparency and reliability" in ADC's intended manner of execution. (Doc. 1 at 9.)

Defendants urge summary dismissal of this claim "for the same reasons cited by the United States Supreme Court in denying Jeffrey Landrigan's claims" and because Plaintiff has failed to allege that drugs obtained from England are unsafe. (Doc. 15 at 7.)

#### 2.    Analysis

To establish a procedural due process violation, Plaintiff must show that (1) he had a property or liberty interest that was interfered with by Defendants, and (2) Defendants failed to use constitutionally sufficient procedures in depriving Plaintiff of that right. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it. Protected liberty interests 'may arise from two sources – the Due Process Clause itself and the laws of the States.'" *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).

Plaintiff has not alleged that Arizona law creates an enforceable liberty interest. Nor has he asserted any authority to support his allegation that the Due Process Clause provides a right to information concerning ADC's acquisition of sodium thiopental. *Cf. Clemons v. Crawford*, 585 F.3d 1119, 1129 n.9 (8th Cir. 2009) (noting lack of authority indicating due process right to probe into backgrounds of execution personnel).

Arizona's lethal injection protocol is publically available, and there is no assertion Plaintiff lacks access to this information. That protocol prescribes a regimen of three specific drugs but does not require that they be obtained from an FDA-approved manufacturer. Rather, it states only that ADC "ensure the chemicals are ordered, arrive as scheduled and are properly stored." *Preparation and Administration of Chemicals*, ADC Department Order 710, Attachment F, *available at* http://www.azcorrections.gov/Policies/700/0710.pdf. Although not required to do so, in a filing in state court, Defendants have provided Plaintiff with specific information concerning its acquisition of sodium thiopental from a company in England. The Court finds that Plaintiff has failed to sufficiently allege a colorable due process claim.

## C.    Claim Three – Deliberate Indifference

### 1.    Parties' Contentions

Plaintiff alleges that trained medical professionals know or should know the substantial risks involved in administering a non-FDA approved drug to a human being and, therefore, ADC's "use of medical professionals who knowingly administer sodium thiopental from a non-FDA approved source are acting with deliberate indifference" in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 1 at 10.)

Defendants asserts that Plaintiff has failed to allege facts demonstrating that administration of sodium thiopental obtained from England will cause him pain or fail to sufficiently anesthetize him and that there is no requirement medical professionals be involved in an execution. (Doc. 15 at 8.)

2.     **Analysis**

"[D]eliberate indifference to a prisoner's serious medical needs is the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  An official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health.  *Farmer*, 511 U.S. at 837.  Thus, to demonstrate deliberate indifference, a plaintiff must establish that the alleged harm was "sufficiently serious" and that the official acted with a "sufficiently culpable state of mind." *Id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 302-03 (1991)).  Mere negligence or medical malpractice does not establish a sufficiently culpable state of mind. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).

Plaintiff's complaint merely recites the elements of a deliberate indifference claim and insists that his rights will be violated if non-FDA approved sodium thiopental is administered by a medical doctor or other trained medical professional.  However, as discussed with regard to Claim One, Plaintiff's complaint fails to allege sufficient facts establishing that use of non-FDA approved sodium thiopental in an execution by lethal injection carries a substantial risk of unnecessary pain and suffering.  Thus, Plaintiff has failed to allege a sufficiently serious harm.

In addition, Plaintiff does not allege any personal involvement by the individual Defendants that demonstrates each will act with a culpable state of mind. *See Iqbal*, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Instead, he asserts only that trained medical professionals "know or should know the substantial risks involved in administering a non-FDA approved drug to a human being." (Doc. 1 at 9.) The Court finds that Plaintiff has failed to sufficiently allege facts indicating the active knowledge and disregard required for a deliberate indifference claim as to each Defendant.

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 15) is **GRANTED** and this action is **DISMISSED**.  The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Eric John King's Motion to Intervene Pursuant to Fed. R. Civ. P. 24(a) and (b) (Doc. 17) is **DENIED AS MOOT**.

DATED this 26th day of January, 2011.

Robert C. Broomfield
Senior United States District Judge

- 11 -